CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 04 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **CHRISTOPHER J. DUDLEY,** ) | |
| ) | Civil Action No. 7:09-cv-00520 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| 4-MCCAR-T, INC., et al. ) | |
| ) | By: Samuel G. Wilson |
| Defendants. ) | United States District Judge |

This is an action by plaintiff, Christopher Dudley, acting *pro se*, against the defendants, 4-McCar-T, Inc. ("4-McCar-T"), his employer, a McDonald's Corporation ("McDonald's") franchisee, and McDonald's, alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").[1] Dudley maintains that defendants discriminated against him because of his homosexuality, failed to accommodate his alleged inability to lift more than 20 pounds, and retaliated against him for engaging in protected activity. The matter is currently before the court on cross-motions for summary judgment. McDonald's maintains that it has never employed Dudley and is not subject to liability as his employer under Title VII or the ADA. 4-McCar-T maintains that it never discriminated against Dudley on account of his sexual orientation, which incidentally is not protected under Title VII; that Dudley is not significantly limited in any of life's major activities and is therefore not disabled, and that it nevertheless reasonably accommodated him; that it was unaware that he had engaged in any protected activity and, in any event, did not retaliate against him; and that it terminated his employment following an event that was the culmination of a pattern of insolence and insubordination. The court grants the defendants' motions.

---

[1] The court has jurisdiction to hear this case under 28 U.S.C. § 1331.

**I.**

Larry and Donna McCarty are the sole shareholders and officers of 4-McCar-T, which owns and operates a McDonald's restaurant franchise in Rocky Mount, Virginia. The franchise agreement requires that 4-McCar-T follow certain procedures relating to operational practices, inventory control, bookkeeping and accounting, and management and advertising policies but expressly provides that 4-McCar-T is not McDonald's agent. Accordingly, 4-McCar-T controls all activities relating to employment matters at the restaurant, including: hiring and supervising employees, determining employee wages, disciplining and terminating employees, determining employee schedules, paying wages, and withholding all applicable employment taxes.

Dudley began working at the restaurant in September 2004, where he primarily worked at the drive-through window. Dudley is openly homosexual, and at no point has attempted to conceal that fact from the defendants. Dudley also maintains a profile page under a pseudonym on MySpace.com, the social networking site, where he posts information and pictures relating to his activities as a "female impressionist." In November 2006, Dudley sustained a back injury in a car accident. As a result of the accident, Dudley claims he could not safely lift more than 20 pounds. As a result of the accident, Dudley's managers placed him on light-duty, and did not ask him to lift anything heavier than 20 pounds until April 2007. Between April 2007 and his final day working at the restaurant in July 2007, Dudley claims that his managers requested that he lift items that exceeded 20 pounds in weight on ten or fewer occasions; however, Dudley received help from coworkers in completing these tasks on all but two occasions. Dudley acknowledged that, outside of those two instances, his back condition "never was an issue." (Dudley Dep. 172.)

Dudley acknowledges numerous arguments and conflicts with his managers. On February 16, 2006, Dudley argued with one of his managers, Alice Smith. He refused to follow

her instructions, and argued that it was not "fair" that she had assigned him a variety of cleaning tasks. Dudley describes this incident as an "oral altercation" and admits that he and Smith "were both kind of yelling at each other." (Id. 114-15.) On July 13, 2006, Dudley responded "fuck that" when two other managers, John Brown and Virginia Dillon, instructed Dudley to move to the grill area. (Id. 117-18.) Later, when Larry McCarty chastened him concerning the incident, Dudley responded that McCarty was "acting like a brat," (Id. 119,) resulting in a ten day suspension. In January 2007, Dudley argued with Donna McCarty after she informed him that he was not eligible for vacation pay.

Dudley nevertheless began expressing an interest in a promotion to a management position and spoke to one of his managers, Kenny Waters, regarding this possibility. Waters informed Dudley that to become eligible for such a promotion Dudley would have to be cross-trained in all of the restaurant's different work stations, including the grill and kitchen areas, where Dudley had received little training.

In June 2007, Larry McCarty discovered that Dudley had posted photographs of the Rocky Mount McDonald's and his coworkers wearing their work uniforms (containing McDonald's logos) on Dudley's MySpace website. McCarty claims he asked Dudley to remove the photographs that depicted the Rocky Mount McDonald's and any McDonald's logos from Dudley's website. Dudley claims that Larry McCarty told him that he must take down the MySpace page altogether and had six months to change his lifestyle or he would never receive a promotion. Approximately a week later, Dudley called Ron Geib, a regional field operations consultant for McDonald's, to discuss how Dudley could earn a promotion and to express dissatisfaction with the current conditions of his employment at 4-McCar-T. During this conversation, Dudley mentioned that he intended to speak to an attorney about the working

conditions at the Rocky Mount McDonald's. Geib told Dudley that he should speak to Larry McCarty regarding his concerns. Afterwards, Geib contacted Larry McCarty and told him that Dudley had called and that McCarty and Dudley should speak to resolve their differences. Both Larry McCarty and Geib deny that they discussed at that time Dudley's intention to contact an attorney.

On July 11, 2007, one of Dudley's managers, Kenny Waters, overheard Dudley complaining about various matters relating to his work assignment and the controversy over Dudley's MySpace website, and asked him to stop complaining and focus on his work. The next day, Larry McCarty heard Dudley complaining about the same issues and again asked Dudley not to discuss personal matters at work. Dudley admittedly responded: "I will discuss what I want." (Dudley Dep. 116.)

Larry McCarty left the room, and Dillon, one of Dudley's managers, asked Dudley to take out the trash. Dudley replied that he could not lift the trash because of his back condition, but he took it out anyway. Dudley then claimed to have hurt his back, and announced his intention to leave for the hospital. Larry McCarty requested that Dudley first meet with him to discuss Dudley's behavior, but Dudley told him that he would not have any meetings with McCarty without an attorney present. Dudley then left work without seeking permission and went to the hospital. As Dudley waited in the hospital lobby, Waters and Larry and Donna McCarty arrived and terminated Dudley's employment because of Dudley's repeated insubordination and the fact that he left work that day without permission.

Dudley has held a number of different jobs since his termination. He first worked as a cashier at Wendy's, but quit to perform construction work for his brother's company, which built homes and boat docks. Later, Dudley took a position as a waiter at a restaurant. Dudley

conceded in his deposition that he sought no physical accommodations while working at the construction company or restaurant.[2]

## II.

McDonald's has moved for summary judgment on the ground that Dudley has presented no evidence suggesting that McDonald's was his employer for purposes of his Title VII and ADA claims. The court agrees, and grants the motion.[3]

Title VII and the ADA both define an "employer" as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person . . . ." 42 U.S.C. §§ 2000e(b), 12111(5). In determining whether an individual is an employee of such an entity, the Fourth Circuit looks primarily at the degree of control the putative employer exercises over the individual. See Bender v. Suburban Hosp., Inc., 159 F.3d 186, 190 (4th Cir. 1998); Garrett v. Phillips Mills, Inc., 721 F.2d 979, 981-82 (4th Cir. 1983).

Here, the evidence discloses nothing more than a franchisor-franchisee relationship between McDonald's and 4-McCar-T, and Dudley has forecasted no evidence that remotely suggests that McDonald's exercised the requisite degree of control to qualify as Dudley's "employer" for purposes of establishing liability under Title VII or the ADA. Dudley does not dispute that 4-McCart-T controls all of the employment related matters at the Rocky Mount

---

[2] Before filing suit, Dudley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 15, 2007, and received a right to sue notice on September 30, 2009.

[3] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party moving for summary judgment bears the burden of informing the court of the basis for its motion, and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

5

restaurant, including hiring and supervising, setting and paying wages, withholding employment taxes, assigning jobs, promoting and demoting, and determining work schedules. While Dudley argues that Larry McCarty fired him because Geib, a McDonald's employee, told Larry McCarty that Dudley intended to contact an attorney, Dudley has not provided any evidence to support this contention. Nor, more importantly, has Dudley even alleged that Geib made the decision to terminate him or counseled Larry McCarty to do so. In short, there is nothing to suggest that McDonald's was either capable of exercising or exercised the degree of control necessary to be considered Dudley's employer.

For these reasons, the court finds that McDonald's did not act as Dudley's employer for the purpose of establishing liability for his claims, and therefore grants McDonald's motion for summary judgment.

### III.

Dudley claims that 4-McCar-T discriminated against him on the basis of his sexual orientation in violation of Title VII.[4] 4-McCar-T moved for summary judgment on these claims because Title VII does not prohibit discrimination based on sexual orientation, and because it had legitimate, nondiscriminatory reasons for discharging Dudley. 4-McCar-T is correct that controlling Fourth Circuit precedent holds that sexual orientation claims are not actionable under Title VII. However, even if they were, the uncontradicted evidence shows that Dudley's sexual orientation had nothing to do with his termination. Accordingly, the court grants the motion on that basis, as well.

---

[4] Dudley, by his own account, is openly homosexual. Under the circumstances, attributing sexual orientation animus to Larry McCarthy is hard to square with his treatment of Dudley in 2005. In 2005, a state court sentenced Dudley to a year in jail for driving after being declared a habitual offender. At Dudley's request, McCarty testified in court on Dudley's behalf, and succeeded in having Dudley placed in a work release program so Dudley could continue working at 4-McCar-T. McCarty also gave Dudley a $1,500 interest free loan to cover his court-imposed fines.

Title VII provides that it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). However, in the words of the Fourth Circuit: "Title VII does not afford a cause of action for discrimination based upon sexual orientation." Wrightson v. Pizza Hut of Am., 99 F.3d 138, 143 (4th Cir. 1996); see also Medina v. Income Support Div., N.M., 413 F.3d 1131, 1135 (10th Cir. 2005); Simonton v. Runyon, 232 F.3d 33, 35-36 (2d Cir. 2000). But even if Title VII were to prohibit sexual orientation discrimination, an employee would have to establish a prima facie case, and to establish a prima facie case of discriminatory discharge the employee must show: (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class. And even if an employee establishes a prima facie case, his employer is not liable if his employer is able to articulate legitimate, nondiscriminatory reasons for discharging the employee, unless the employee also is able to marshal sufficient evidence that those reasons are a pretext for discrimination. Adams v. The Trustees of the Univ. of N.C.-Wilmington, 2011 WL 1289054, *7 (4th Cir. Apr. 6, 2011) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004)).[5]

---

[5] In response to 4-McCar-T's motion for summary judgment, Dudley concedes that Title VII does not protect against discrimination based on sexual orientation, but attempts to rehabilitate his claim by arguing that his sexual orientation and his activities as a female impressionist are protected by the First Amendment. A First Amendment claim is equally futile, not only because the First Amendment does not apply to private employers, such as 4-McCar-T, See Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 817 n.5 (4th Cir. 2004), but also because it is clear that his employer terminated him for his insubordination in refusing to meet without the presence of a lawyer and leaving work without permission on July 12, 2007.

The evidence here falls far short of demonstrating that Dudley was meeting his employer's legitimate expectations. Indeed, the evidence is quite to the contrary. The uncontradicted evidence shows that Dudley was disrespectful, disruptive and insubordinate and his relationship with his supervisors strained and difficult. Consequently, even if his sexual orientation were protected under Title VII, because the evidence before the court in no manner supports an inference that Dudley was meeting his employer's legitimate expectations, Dudley's evidence would nevertheless fail to establish a prima facie case of discrimination. Dudley argued with his managers, argued with 4-McCar-T's owners, told one of them that he was "acting like a brat," and received a ten day suspension. Undeterred, the day before his termination, Dudley refused to follow his manager's instruction not to discuss personal matters while on the job, and on the date of his termination when Larry McCarty heard Dudley complaining about the same issues and asked Dudley again not to discuss those matters at work, Dudley responded: "I will discuss what I want." Finally, when Larry McCarty asked to meet with Dudley to discuss this latest round of unprofessional behavior, Dudley refused to speak with him without an attorney present, a demand which is neither supported by Title VII, see Grice v. Balt. Cnty., Md., 2009 WL 4506395, at *5 (4th Cir. Dec. 3, 2009) (affirming district court's decision that an employee's refusal to meet with her supervisor without an attorney present constituted a legitimate, nondiscriminatory reason for termination), nor acceptable in the workplace. But whether these circumstances are viewed as part of the calculus of whether Dudley has established a prima facie case[6] or viewed as evidence of legitimate, nondiscriminatory reasons supporting Dudley's termination, Dudley does not dispute that they occurred, and they are quite sufficient to support 4-McCar-T's decision to terminate him.

---

[6] As the Fourth Circuit has stated, "[w]hether an employee is performing at a level that meets legitimate expectations is based on the employer's perception, and [the employee's] own, unsubstantiated assertions to the contrary are insufficient to stave off summary judgment." Morrall v. Gates, 370 Fed. App'x 396, 398 (4th Cir. 2010).

Accordingly, the court grants 4-McCar-T's motion for summary judgment on Dudley's Title VII sexual orientation claim.

## IV.

Dudley claims that 4-McCar-T terminated his employment because 4-McCar-T learned that Dudley planned to file a complaint with the EEOC. 4-McCar-T moved for summary judgment on this claim on the ground that Dudley presented no evidence suggesting that 4-McCar-T even knew that Dudley had engaged or intended to engage in protected activity and that 4-McCar-T had in fact, discharged Dudley for a legitimate nondiscriminatory reason: insubordination. Again, the court agrees.

To establish a prima facie case for retaliation under either Title VII or the ADA, a plaintiff must show that: (1) he engaged in conduct protected by either Title VII or the ADA; (2) the defendant acted adversely against him; and (3) there was a causal connection between the protected activity and the adverse action. Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007); Mason v. Wyeth, Inc., 183 Fed. App'x 353, 363 (4th Cir. 2006). Even if the plaintiff is able to establish a prima facie case of discrimination, his employer can rebut that case by demonstrating that it terminated the plaintiff for legitimate nondiscriminatory reasons. See Hoyle v. Freightliner, LLC, 2011 WL 1206658, at *12 (4th Cir. Apr. 1, 2011).

Dudley alleges that he told Geib that he planned to file an EEOC charge and that Geib relayed this information to Larry McCarty, who retaliated by discharging Dudley. Geib, however, denies telling McCarthy any such thing. Though Geib and McCarty acknowledge that Geib called McCarty to discuss Dudley's phone call, both filed affidavits stating that at no point in the conversation did Geib communicate Dudley's alleged threat to contact an attorney or file

an EEOC charge.[7] Larry McCarty's first indication that Dudley was threatening legal action occurred on the day he terminated Dudley, when Dudley told him that he would not attend any meetings without having an attorney present. But, in any event, neither Title VII nor the ADA shields an employee from the consequences of refusing to meet with his managers in the absence of an attorney, Grice v. Balt. County., 354 Fed.Appx. 742 (4th Cir. 2009), or from the kind of insubordination the evidence discloses here. Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008) ("[A] complaining worker is not thereby insulated from the consequences of insubordination or poor performance.")

Because Dudley has failed to provide any evidence upon which a fact finder could find 4-McCar-T liable for unlawful retaliation in violation of Title VII and the ADA, the court grants 4-McCar-T's motion for summary judgment as to Dudley's retaliation claim.

V.

4-McCar-T moved for summary judgment on Dudley's claims under the ADA that 4-McCar-T discriminated against him by requiring him to lift objects exceeding 20 pounds in weight on various occasions even though its managers knew Dudley had a back problem prohibiting him from safely lifting this amount. The court finds that Dudley has marshaled no evidence from which a jury could find that he was disabled within the meaning of the ADA, and therefore grants 4-McCar-T's motion.

The ADA requires that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an ... employee." 42 U.S.C. § 12112(b)(5)(A). To demonstrate that he is entitled to relief, the plaintiff must show: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he

---

[7] Geib denies Dudley even told him that he was contemplating filing an EEOC charge.

could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations." Rhoads v. F.D.I.C., 257 F.3d 373, 387 (4th Cir.2001) (quoting Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir.1999)). An individual is "disabled" if he has "a physical or mental impairment that substantially limits one or more major life activities," a "record of such an impairment," or is "regarded as having such an impairment." 42 U.S.C. §§ 12102(1)(A)-(C).[8] An individual is "substantially limit[ed]" if he is:

> (i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii)[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same activity.

29 C.F.R. § 1630.2(j)(1) (2001). Such a determination must be made on an individualized basis, but these terms are nonetheless strictly interpreted to "create a demanding standard for qualifying as disabled." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002).

Dudley advances no evidence supporting his contention that his injuries significantly restrict his ability to engage in the major life activities of lifting[9] or working[10] relative to the average person in the general population. Indeed, after leaving 4-McCar-T, Dudley worked other jobs without incident or accommodation, including a construction job that required lifting. (Dudley Dep. 68-69, 174.) Without evidence that his alleged disabilities have a substantial impact on his ability to engage in these life activities on a daily basis, merely alleging that he had

---

[8] Although Dudley purports to bring this action under the ADA Amendments Act of 2008 ("ADAAA"), at least six circuits have found that the ADAAA does not apply retroactively. See Alexander v. QVC Distribution Ctr., 678 F. Supp. 2d 337, 344 (E.D.N.C. 2009) (citing cases). As the events giving rise to Dudley's claims took place prior to the passage of the ADAAA, the court examines whether 4-McCar-T's actions violated the ADA at the time the conduct occurred.

[9] When addressing whether a plaintiff is limited in the activity of performing manual tasks, the Supreme Court has instructed courts that "the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether claimant is unable to perform the tasks associated with her specific job." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 200-01 (2002).

[10] As the Supreme Court and Fourth Circuit have held, "[t]o be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice." Taylor v. Fed. Express Corp., 429 F.3d 461, 464 (4th Cir. 2005) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999)).

a 20 pound lifting restriction is not sufficient to establish that he is disabled under the ADA. See, e.g., Taylor v. Fed. Express Corp., 429 F.3d 461, 464 (4th Cir. 2005) (30 pound lifting restriction not a disability where the record demonstrated the plaintiff could still perform a range of daily activities and a number of other jobs); Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir. 1996) (25 pound lifting restriction does not constitute a significant restriction on a person's ability to perform a major life activity); see also DiCara v. Conn. Rivers Council, 663 F. Supp. 2d 85, 93 (D. Conn. 2009) (15 pound lifting restriction did not render plaintiff disabled); Quevedo-Gaitan v. Sears Roebuck de Puerto Rico, Inc., 536 F. Supp. 2d 158, 167 (D.P.R. 2008) (plaintiff was not disabled when her chronic lupus left her still able to "walk, care for herself, drive an automobile, and lift objects that weigh less than twenty pounds").

Because Dudley has failed to demonstrate a dispute of material fact regarding whether he is disabled under the ADA, the court grants the defendants' motion for summary judgment on this claim.[11]

## VI.

For the reasons stated above, the court grants the defendants' motions for summary judgment.[12]

---

[11] Even if the 20 pound lifting restriction were considered to be a disability, Dudley's claim that 4-McCar-T failed to reasonably accommodate the restriction would be dubious, given that Dudley acknowledges that his supervisors asked him to lift an object heavier than 20 pounds, without providing him with any assistance, on only two occasions. However, the court need not reach this issue because Dudley has not demonstrated that he was disabled within the meaning of the ADA in the first instance.

[12] The court notes that it shares the concerns of the Magistrate Judge regarding Dudley's conduct during the course of these proceedings. In an email sent to 4-McCar-T's counsel on January 24, 2011, Dudley stated:
> I will continue with the appeals process as long and as necassarry [sic] and will continue with my claim against your client. And I'm willing to keep this claim in court for many more years to come costing your clients as well as mr Douthat [sic] client and each of your lawfirms [sic] additional costs that could range in the 5 figure digits.

(Dkt. #85, at Ex. A.) As the Magistrate Judge noted, "Our system of justice only works when parties act in good faith to achieve justice and seek the truth, rather than engage in protracted battles solely for the purpose of requiring the opposing side to expend valuable resources to defend lawsuits." (Dkt. # 88 at 9.) However, these concerns bear more on the issue of fee shifting than they do the merits, should that issue arise.

**ENTER**: May 4, 2011.

_____
UNITED STATES DISTRICT JUDGE